**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **IFONE NEDA INTERNET SERVICE, INC., and IFONE, INC.,** | § § § | |
| *Plaintiffs,* | § § | |
| **v.** | § § | **Civil Action No. _____** |
| **ARMY & AIR FORCE EXCHANGE SERVICE, DEPARTMENT OF THE ARMY, DEPARTMENT OF DEFENSE, MATTHEW T. ADAMCZYK, Lt. Col., and KRISTIN MAZUR,** | § § § § § § | |
| *Defendants.* | § | |

---

**PLAINTIFFS' ORIGINAL COMPLAINT,
APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS,
AND REQUEST FOR DECLARATORY RELIEF
"ADMINISTRATIVE PROCEDURE ACT CASE"**

---

**NEEL, HOOPER & BANES, P.C.**

**BRYANT S. BANES**
Federal ID No. 31149
Texas Bar No. 24035950
E-Mail:  bbanes@nhblaw.com

**SARAH P. HARRIS**
Texas State Bar No. 24113667
Federal ID No. 3421904
E-Mail:  sharris@nhblaw.com

1800 West Loop South, Suite 1750
Houston, Texas 77027
(713) 629-1800
(713) 629-1812 (Fax)

**ATTORNEYS FOR PLAINTIFFS**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IFONE NEDA INTERNET SERVICE, INC.,** | § | |
| **and IFONE, INC.,** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **Civil Action No. _____** |
| | § | |
| **ARMY & AIR FORCE EXCHANGE** | § | |
| **SERVICE, DEPARTMENT OF THE** | § | |
| **ARMY, DEPARTMENT OF DEFENSE,** | § | |
| **MATTHEW T. ADAMCZYK, Lt. Col., and** | § | |
| **KRISTIN MAZUR,** | § | |
| | § | |
| *Defendants.* | § | |

---

**PLAINTIFFS' ORIGINAL COMPLAINT,**
**APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIONS,**
**AND REQUEST FOR DECLARATORY RELIEF**
**"ADMINISTRATIVE PROCEDURE ACT CASE"**

---

Plaintiffs, IFONE NEDA Internet Service, Inc. and IFONE, Inc. ("Plaintiffs" or

"IFONE")[1], through their undersigned counsel, hereby file this Plaintiffs' Complaint, Application

for Temporary and Permanent Injunctions, as well as Request for Declaratory Relief,

"Administrative Procedure Act Case," against Defendants, the Army & Air Force Exchange

Service ("AAFES"), the Department of the Army ("DOA"), the Department of Defense ("DOD"),

Matthew T. Adamczyk, Lt. Col. ("Adamczyk"), in his official capacity as Installation Commander

---

[1]      The Plaintiffs are referred to collectively throughout because they are related parties, and
their injury and remedy sought is the same for both at this stage.  There are differences if this
action for injunction and declaratory relief fails, and the Plaintiffs then must proceed to the U.S.
Court of Federal Claims and sue for damages.  However, those pending claims are not asserted
here as this case is not based upon contract, and they will be the subject of claims currently pending
before cognizant government officials.

1

or "COMKAF," and Kristin Mazur ("Mazur" or "Mayor Mazur"), in her capacity as Camp Mayor. ("AAFES," "DA," "DOD," "Adamczyk," and "Mazur" are also referred to herein collectively as "Defendants").  Plaintiffs seek judicial intervention and review of the Defendants' decision to retract a space allocation and authorization "inside the wire" that established IFONE as a mission-critical[2] and protected internet service provider to the North Atlantic Treaty Organization ("NATO") troops and contractors, including the U.S. Garrison at Kandahar Airfield, in Afghanistan.  This space allocation and authorization, as well as its mission-critical nature, was authorized by Defendant Adamczyk's predecessor, General Eastman, and properly issued and approved by Defendant Mazur's predecessor, Mr. Ted A. Lopez (*See* **Exhibit 1, Enclosures 1-3**). IFONE has exhausted any administrative remedies by seeking review by cognizant Government officials, but their decision is final and unchanged. (*See* **Exhibit 2**).

IFONE provides internet services under contracts with AAFES and mission-essential Government contractors at Kandahar Airfield.  By retracting IFONE's properly issued authorization to access and be provided an allocated space on the NATO installation at Kandahar Airfield, and to provide services to troops and contractors on the base, Defendants impermissibly restrict competition for internet services, in violation of the Competition in Contracting Act ("CICA"), 41 U.S.C. § 3301, et seq. and other applicable law and regulation.[3]  Defendants' actions

---

[2]      A "mission-critical" or "mission-essential function" generally includes activities that must be performed under all circumstances to achieve DOD-component missions or responsibilities. *See, e.g.*, 48 C.F.R. § 252.237-7023(a)(1).

[3]      Generally, any reduction of sources to one vendor for government requirements or on government installations, even in a contingency environment, require a justification and approval ("J&A").  *See, e.g.*, 48 C.F.R. § 6.303.  AAFES regulations in this regard are similar.  While Plaintiffs are unaware of any such J&A being completed or approved, the reasons IFONE has been provided, namely that this is what the Installation Commander wants, do not meet any criteria for same.  These may include unusual or compelling urgency or that only one (1) responsible source exists, neither of which is true here.  *Accord* 48 C.F.R. § 6.302-1 or -2.

in this regard are arbitrary, capricious, and contrary to law or regulation.  As such, IFONE is entitled to judicial review and relief under sections 702 and 703 of the Administrative Procedure Act ("APA").  5 U.S.C. §§ 702–03.

It is notable that the Government tried to do this before to Plaintiffs, and after a similar APA lawsuit was filed, agreed it was not legal, violative of competition laws and regulation, and not to do it in the future (*See* **Exhibit 1**, **Enclosures 4-5**).  In this action, the Government has done the same thing again; this APA action is again ripe and ready for review.

In support of its claims and causes of action, IFONE alleges as follows:

## Parties

1.      Plaintiffs, IFONE NEDA and IFONE, INC., are corporations, the first organized under the laws of the United Arab Emirates ("UAE"), and the latter organized under the laws of the State of Florida.  Both IFONE NEDA and IFONE are licensed by the Afghanistan Government to operate and provide services in that country.  IFONE NEDA and IFONE's principal places of business are in Afghanistan.

2.      Defendant, AAFES, is an instrumentality of the United States Government, organized and operated jointly by the DOA and the Department of the Air Force ("DAF").  AAFES is represented by the United States Department of Justice ("DOJ") and can be served through Ryan K. Patrick, the United States Attorney for the Southern District of Texas, 1000 Louisiana Street, Suite 2300, Houston, Texas 77002.

3.      Defendant, DOA, is an agency of the United States of America.  DOA is represented by the DOJ and can be served through Ryan K. Patrick, the United States Attorney for the Southern District of Texas, 1000 Louisiana Street, Suite 2300, Houston, Texas 77002.

4.      Defendant, DOD, is an agency of the United States of America.  DOD is represented by the DOJ and can be served through Ryan K. Patrick, the United States Attorney for the Southern District of Texas, 1000 Louisiana Street, Suite 2300, Houston, Texas 77002.

5.      Defendant, Lt. Col. Adamczyk, is an agent of the United States of America. Adamczyk is represented by the DOJ and can be served through Ryan K. Patrick, the United States Attorney for the Southern District of Texas, 1000 Louisiana Street, Suite 2300, Houston, Texas 77002.

6.       Defendant, Mazur, is an agent of the United States of America.  Mazur is represented by the DOJ and can be served through Ryan K. Patrick, the United States Attorney for the Southern District of Texas, 1000 Louisiana Street, Suite 2300, Houston, Texas 77002.

## I.      Jurisdiction

7.      This Court has exclusive federal jurisdiction because the United States is a party. U.S. CONST. art. 3, § 2, cl. 1.

8.      This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 because there exist federal questions arising under CICA, 41 U.S.C. § 3301, *et seq.* and other applicable law and regulation, including DOD Instruction ("DODI") 3020.41, the Defense Federal Acquisition Regulations Supplement ("DFARS"), Class Deviation 2020-O0002 and its predecessors, and the Defense Contingency Contracting Handbook.  An actual and justiciable controversy exists between Plaintiffs and Defendants as to which Plaintiffs require declaratory and injunctive relief.

9.      Subject matter jurisdiction is proper under the APA, because IFONE is adversely affected or aggrieved by final agency action or failure to act.  5 U.S.C. § 702.

## II. <u>Venue</u>

10.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(2), 1391(e)(1), and 5 U.S.C. § 703.

## III. <u>Conditions Precedent</u>

11.     All conditions precedent have been performed or have occurred.

## <u>Factual Background</u>

12.     The foregoing allegations are incorporated herein as fully restated.

13.     On April 6, 2013, the U.S. Garrison Commander, as authorized by the Installation Commander at Kandahar Airfield and AAFES, issued a signed, formally approved document that served as a permit authorizing IFONE to access, have space, and provide internet services to troops and contractors at the NATO-controlled, Kandahar Airfield.  (*See* **Exhibit 1, Enclosures 5-6**, attached hereto).

14.     IFONE, with Government approval and AAFES awareness, has been expanding its network, installing miles of fiber, performing mission-essential internet services contracts on the base, and providing internet to the troops at Kandahar Airfield since 2008. (*See, e.g.,* **Exhibit 3**, attached hereto).  These mission-essential contractors include the U.S. Base Operations Contractor at Kandahar Airfield, as well as other government contractors providing other services to the command and the troops. (*Id.*).

15.     On September 22, 2014, IFONE was awarded follow-on vendor contract number ATD-14-008 ("Contract") by AAFES to provide internet service to troops living at Kandahar Airfield.  The Contract reiterated IFONE's permission and authorization to access, have space, provide services, and have force protection on the base.

16.     Based on its written permit and authorization, and its prior permit and authorization, IFONE had internet service equipment installed and has obtained the bandwidth necessary to provide the permitted services.  Previously, IFONE spent nearly $1 million installing internet services.  Following its initial installation of internet services, IFONE has spent years installing infrastructure and developing customers at Kandahar Airfield, and expanded its capabilities at considerable expense in 2019 with Government approval (*See* **Exhibit 3**, attached hereto).

17.     In 2013, Plaintiff sued AAFES, DOA, DOD, and Col. Malone in the Southern District of Texas for an APA violation, for AAFES, DOA, DOD, and Col. Malone's tortious interference with IFONE's permission and authorization to remain on the base. *See IFONE NEDA Internet Service, Inc. v. DOA, et al.*, Civ. Action No. 4:12-cv-00703 (S.D. Tex.). The action resulted in a Settlement Agreement.  (**Exhibit 1, Enclosure 4,** attached hereto).

18.     On October 31, 2019, the Government identified IFONE as mission-critical and approved network expansion of IFONE's services.  (**Exhibit 3,** attached hereto).  The mission-critical nature of IFONE's service is confirmed and detailed in several endorsements from Government officials and Government contractors (*See* **Exhibits 4-7**).

19.     In late December 2020, after the arrival of new replacements for the military command at Kandahar Airfield, IFONE began receiving requests to move its location and a plan for same, as the base footprint was soon to shrink, and the protective wall would move.  On January 25, 2021, IFONE provided a plan to the Government that would establish a second internet service point inside the wire[4] within two (2) weeks of IFONE being assigned a location inside the new Camp Brown enclave. (**Exhibit 8,** attached hereto).

---

[4]     Being "inside the wire" means that you are inside the protective wall or compound where those accompanying the military force are relatively safe from direct fire, kidnapping, seizure by hostile elements, or theft.  Being "outside the wire" is the opposite.

20.     On January 26, 2021, the Government, through Contracting Officer ("KO") James S. Gordon ("Gordon"), sent IFONE a letter, purporting to exercise AAFES's right to terminate the Contract and ordering them to remove their equipment within thirty (30) days and vacate, effective February 28, 2021.   (**Exhibit 1, Enclosure 1,** attached hereto).   The termination letter and subsequent written communications with Government officials provided no proper justification for the withdrawal of IFONE's authorization to have space and provide internet services on the base, other than AAFES had been told by the military command to reduce the internet providers to one (1).  This statement by AAFES admits that the Government seeks to eliminate competition between internet service providers ("ISP"), against applicable law and regulations.

21.     If IFONE cannot access the base, it also cannot perform its mission-critical commercial contracts to provide services on the base.   Moreover, by terminating IFONE's Contract, only one (1) ISP remains at Kandahar Airfield—DHI Telecom, LLC ("DHI"), a competitor of IFONE.

22.     On January 27, 2021, IFONE sent correspondence to KO Gordon, notifying Gordon of the Government's breach of contract and intention to proceed with legal action in this Court. (*See* **Exhibit 1, Enclosure 1,** attached hereto).  The correspondence was also sent, in pertinent part, to Adamczyk and Mayor Mazur.

23.     In response, Mayor Mazur stated not to send correspondence to anyone but the KO for AAFES, making her and the military command's decision clearly final.  The military command has not responded to any follow-up communications.  (See **Exhibit 2,** attached hereto).

24.     To date, neither the KO nor the military command have responded to counsel for IFONE's January 27, 2021 correspondence.  Given the nature of the suit and the urgency of same, IFONE brings this suit.

25.     Put simply, because the military command intends to terminate IFONE's presence on the base by February 28, 2021, IFONE must provide notices shortly to its customers and its own service providers that its services are being ended.  Once those notices are provided, the considerable damages the Government caused will be subject to a claim and lawsuit for damages due to its irretrievable breach.  The last clear chance to avoid that now rests with this Court.

### Causes of Action Under the APA

26.     The foregoing allegations are incorporated herein as fully restated.

27.     Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

28.     Under the APA, courts have the authority to: compel agency action that is unlawfully withheld or unreasonably delayed; overturn agency action that is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law; overturn agency action that violates a right or privilege under the United States Constitution; or overturn agency action that fails to observe a procedure that is required by law.  5 U.S.C. § 706.

29.     The APA's comprehensive provisions allow any person "adversely affected or aggrieved" by agency action to obtain judicial review thereof, so long as the decision challenged represents a "final agency action for which there is no other adequate remedy in a court." *Webster v. Doe*, 486 U.S. 592, 599 (1988) (quoting 5 U.S.C. §§ 701-06).

30.     The decision at issue herein was final.  IFONE attempted to correspond with the KO and other Government personnel with authority (including the Camp Mayor, Defendant Mazur), but its attempts were summarily rebuffed and rejected without consideration.  Under the facts at issue, Defendants have caused IFONE imminent and irreparable harm.  Further, the

Defendants' actions are contrary to the public interest and amount to a violation of full, fair, and open competition requirements of CICA and violate the following:  DOD Instruction 3020.41, the DFARS, Class Deviation 2020-O0002 and its predecessors, and the Defense Contingency Contracting Handbook.

31.     Defendants' unfounded and insupportable retraction of IFONE's prior permit and written authorizations has caused, and is continuing to cause, IFONE imminent and irreparable harm.   Defendants' actions as described herein, particularly their refusal to consider the requirements of CICA, are arbitrary and capricious, unwarranted by the facts at issue, and in violation of a variety of laws and regulations.

32.     Thus, pursuant to 5 U.S.C. § 706 and other applicable law and regulation, IFONE is entitled to an order compelling the Defendants to vacate their retraction of IFONE's permit and authorization, as well as an order compelling the Defendants to reinstate IFONE's prior permit and approvals in compliance with CICA and any other applicable initiative.

### IV.     Defendants' Wrongful Acts Are Justiciable and Are Subject to Judicial Review

33.     At issue in this case is the January 27, 2021 decision by KO Gordon, and the directives by military commanders leading to it, to retract Plaintiffs' prior permit and authorization to have space at and provide internet services to the NATO troops and contractors at Kandahar Airfield in Kandahar, Afghanistan.   The Government provided no proper justification for its withdrawal of authorization for IFONE and has again arbitrarily reduced internet providers to one.

34.     This controversy is justiciable, and the Defendants' misconduct is subject to judicial review.  *See Adkins v. United States,* 68 F.3d 1317, 1322-23 (Fed. Cir. 1995); *Diebold v. United States,* 947 F.2d 787, 808 (6th Cir. 1992); *Watkins v. United States Army,* 875 F.2d 699, 706 (9th Cir. 1989), *cert. denied,* 498 U.S. 957 (1990); *Mindes v. Seaman,* 453 F.2d 197, 199 (5th

Cir. 1971), *rev'd on other grounds on appeal after remand,* 501 F.2d 175 (5th Cir. 1974).  There are a variety of reasons why this is so and is not covered by military necessity.  For example, the services at issue here are commercial in nature, not military.  Further, the agencies and other mission-essential contractors at issue here are civilian, not military, instrumentalities.  Moreover, Plaintiffs are civilian contractors.  Because the decision of Defendants involved commercial, retail, internet services, a civilian contractor and a civil agency, their decision is not military in nature.  Accordingly, the decision is subject to judicial review, and the controversy arising from the decision is justiciable.  *See id.*

35.     The controversy at issue is justiciable for the additional reason that the Plaintiffs are not only challenging the substance of Defendants' retraction, but the procedures under which the targeted retraction of Plaintiffs' commercial rights were approved.  This challenge under the APA would be justiciable even if the decision involved strictly military matters.  *See Adkins v. United States,* 68 F.3d 1317, 1322–23 (Fed. Cir. 1995).

36.     The Defendants' retraction is subject to judicial review because the APA applies to all agencies:  none are exempt.  *Diebold v. United States,* 947 F.2d 787, 808 (6th Cir. 1992).  This is particularly true when the activity at issue is commercial activity, such as here.  *Id.*  A complex scheme of statutes and regulations governs federal procurement regulations.  *Id.*  Further, Congress has directed Defendant, DOD, to contract with members of the private sector, such as IFONE, rather than Government agencies, when the private sector can provide the same services at a lower cost.  *See* 10 U.S.C. § 2462.  Any exceptions to this rule are extremely narrowly defined to areas of prosecutorial discretion or situations implicating national security, neither of which apply here. *Diebold v. United States,* 947 F.2d 787, 790 (6th Cir. 1992)(citing *Heckler v. Chaney*, 470 U.S. 821 (1985), and *Webster v. Doe*, 486 U.S. 592 (1988)).

37.     Even if this dispute involved purely military affairs, rather than commercial affairs, it would still be justiciable, and Defendants' misconduct would be subject to judicial review.  *See Watkins v. United States Army,* 875 F.2d 699, 706 (9th Cir. 1989), *cert. denied,* 498 U.S. 957 (1990).  It is clear that where a military officer has acted outside the scope of his/her duties and misapplied a Federal law and regulation (here, CICA and DODI 3020.41, the DFARS, Class Deviation 2020-O0002 and its predecessors, and the Defense Contingency Contracting Handbook), judicial review is appropriate, and the Courts can fashion a remedy.  *See Mindes v. Seaman*, 453 F.2d 197, 199 (5th Cir. 1971), *rev'd on other grounds on appeal after remand,* 501 F.2d 175 (5th Cir. 1974).  In matters that are not purely military in nature, "[w]hether the Post Commander acts arbitrarily or capriciously, without proper justification, is a question which the courts are always open to decide."  *Id.* at 200.

38.     The Defendants also are not immune from judicial review simply because they are agents and instrumentalities of the Federal Government.  As a general principle, the Federal Government is ordinarily treated just like a private party in commercial dealings, such as those at issue in this case.  *See United States v. Winstar Corp.*, 518 U.S. 839, 887 n.32 (1996); *Perry v. United States*, 294 U.S. 330, 352 (1935).

39.     Moreover, it is axiomatic that the sovereign acts defense is unavailable in cases such as this, where the governmental action at issue is specifically directed at nullifying a particular party's property or commercial rights.  *Conner Bros. Constr. Co. v. Geren*, 550 F.3d 1368, 1374 (Fed. Cir. 2008).  In this case, Defendants specifically targeted IFONE's rights and specifically targeted IFONE after it had spent millions of dollars in support of the Government and was identified as mission-critical.  Further, Defendants' carefully timed actions came only after IFONE submitted a proposed plan to establish a second internet service point (known as a network

11

operation center or "NOC") inside the wire and had spent well over $1 million to install internet access and proper bandwidth equipment. Because the Defendants' intentional attacks were specifically directed at nullifying rights awarded to Plaintiffs, a sovereign acts defense is not available to the Defendants here. *Id.* This defense is also unavailable because the Government has tried this before and failed for the same reasons it attempts here (*See* **Exhibit 1, Enclosure 4**

40.    Accordingly, the Defendants' misconduct is subject to judicial review, and the claims Plaintiffs raise herein are justiciable. Defendants' misconduct also violates Plaintiffs' statutory rights and entitle Plaintiffs to the relief requested.

<u>**Requests for Relief**</u>

41.    The foregoing allegations are incorporated herein as fully restated.

42.    The relief requested is injunctive and declaratory in nature. This relief is necessary to stop the Defendants' unjust enrichment the Government is allowing for a single contractor. This requested relief will also protect and preserve America's counterinsurgency efforts in Afghanistan. Without such relief, the factually unwarranted, arbitrary, and capricious actions of the Defendants will continue to eliminate competition and cause the Government and IFONE imminent and irreparable harm.

43.    The need for judicial intervention is necessary because of the disingenuous and surreptitious manner in which the decision at issue was made and has been upheld, and also the fact that the ability to provide such relief will quickly be overtaken by events in the next couple weeks. It is incontrovertible that that Defendants Adamczyk and Mazur retracted their predecessors' authorization to benefit one contractor, DHI, with the consent of AAFES. By acting in concert, the Defendants gained the additional benefit of always being able to blame the other for the injury to IFONE, while simultaneously claiming an inability to correct the situation. (*See*

**Exhibit 2**).

44.     As a result, everyone involved denies responsibility while wringing their hands over their inability to correct the wrong that was done.  It is necessary for the Court to cut through this unbecoming gamesmanship so that justice can be done, just as it did before, when the Government acted in an identical fashion.  (*See* **Exhibit 1, Enclosures 4-6**).

**A.     Plaintiff Seeks a Temporary Restraining Order, as Well as Preliminary and Permanent Injunctive Relief**

45.     The foregoing allegations are incorporated herein as fully restated.

46.     Pursuant to FRCP 65 and 5 U.S.C. § 703, Plaintiffs request that this Court issue temporary, preliminary, and permanent injunctive relief:  (i) enjoining Defendants from retracting IFONE's permit and approval to provide internet services to the NATO troops and contractors "inside the wire" at Kandahar Airfield; (ii) compelling Defendants to honor the prior written authorization issued by the Garrison Commander of Kandahar Airfield and the COMKAF Commander which authorizes IFONE space "inside the wire" to provide internet services to the NATO contractors and troops, (iii) compelling the Defendants to honor IFONE's installation plan for the providing of these approved services; (iv) compelling Defendants to vacate their actions; (v) compelling Defendants to consider and apply CICA, DODI 3020.41, the DFARS, Class Deviation 2020-O0002 and its predecessors, and the Defense Contingency Contracting Handbook, and all appropriate law and regulation to the instant situation and any other foreign policy and initiative that may be appropriate; and (vi) compelling Defendants to reinstate the permit and approvals awarded to IFONE.

**i.     *IFONE is Entitled to Injunctive Relief***

47.     A court shall compel agency action that is unlawfully withheld or unreasonably delayed and enjoin agency action found to be:  arbitrary and capricious; an abuse of discretion;

otherwise not in accordance with the law; contrary to constitutional right, power, privilege, or immunity; or without observance of procedure required by law.  *See* 5 U.S.C. § 706(2).

48.     To obtain a temporary restraining order, as well as preliminary injunctive relief, Plaintiffs must show each of the following:  (i) that Plaintiffs will likely suffer imminent and irreparable injury if the Defendants' retraction of rights granted Plaintiffs are allowed to stand; (ii) there is no adequate remedy at law, because the permit retracted is not one for which lost profits can be easily calculated, if at all; (iii) there is a substantial likelihood that Plaintiffs will prevail on the merits; (iv) the threatened harm to the Plaintiffs outweighs the harm that a temporary restraining order would inflict on the Defendants; and (v) the issuance of a temporary restraining order would not adversely affect the public interest or public policy, because it is in the public's best interest to hold its government agencies to an appropriate, constitutional standard.  Fed. R. Civ. P. 65(b)(1); *see Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *N. Cal. Power Agency v. Grace Geothermal Corp.,* 469 U.S. 1306, 1306 (1984); *Wilson v. Ill. S. Ry. Co.,* 263 U.S. 574, 576-77 (1924); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005); *Fairchild Semiconductor Corp. v. Third Dimension (3D) Semiconductor, Inc.*, 564 F. Supp. 2d 63, 66-68 (D. Me. 2008); *NW Airlines, Inc. v. Bauer*, 467 F. Supp. 2d  957, 963-64 (D.N.D. 2006); *Midwest Retailer Associated, Ltd. v. City of Toledo*, 563 F. Supp. 2d 796, 812 (N.D. Ohio 2008); *Winston v. Gen. Drivers, Warehousemen & Helpers Local Union No. 89,* 879 F. Supp. 719, 725 (W.D. Ky. 1995).

### ii.     *Plaintiffs Will Continue to Suffer Irreparable Harm if Injunction Not Issued*

49.     Plaintiffs will continue to suffer irreparable injury in the absence of the requested injunctive relief.  There is no adequate remedy at law that can cure the damage to Plaintiffs for Defendants' wrongful and egregious acts.  The Defendants have caused irreparable harm to the

Plaintiffs by causing a retraction of Plaintiffs' rightfully obtained permit and approvals.  Further, Defendants have taken the money and time expended by Plaintiffs as well as the equipment purchased by Plaintiffs.  The effect of Defendants' termination of Plaintiffs' Contract has resulted in only one (1) company to provide internet services to Kandahar Airfield—DHI.  As Plaintiff has both Government and commercial contracts at Kandahar Airfield and will be unable to access the area upon termination, Plaintiffs will be forced to breach their commercial contracts, which will leave only (1) ISP to assume those commercial services.  In this, Defendants have violated the full, open, and fair competition provisions of CICA and DODI3020.41, DFARS 237.7603, Class Deviation 2020-O0002 and its predecessors, and the Defense Contingency Contracting Handbook.

50.     The harm caused to IFONE by Defendants' wrongful and unreasonable acts is clear and indisputable.  Further, Plaintiffs' legal damages are difficult, if not impossible to calculate: because of the nature of the internet services at issue, it is difficult, if not impossible, to determine what Plaintiffs' lost profits might be under the permit at issue.  Moreover, the Government has told IFONE that it will be "outside the wire," even though the Government is required to protect IFONE and its equipment.  IFONE is unable to determine the value it will lose from being outside the wire, however, the effect of being outside the wire is not unknown—IFONE will be exposed to equipment and property theft and seizure by hostile elements.  Indeed, the United States Department of State has a current travel advisory against travel to Afghanistan, labeling Afghanistan as "Level 4: DO NOT TRAVEL," which is the highest travel advisory level.[5]  Among the stated reasons for the travel advisory against travel to Afghanistan are:  COVID-19, crime,

---

[5]     The Department of State website provides four (4) travel advisory levels:  Level 1 advises travelers to exercise normal precautions.  Level 2 advises travelers to exercise increased caution.  Level 3 advises travelers to reconsider travel. Level 4—the highest level—is a "do not travel" advisory.   https://travel.state.gov/content/travel/en/traveladvisories/traveladvisories/afghanistan-advisory.html.

terrorism, civil unrest, kidnapping, and armed conflict, stating that travel to "all areas" of Afghanistan is unsafe for those reasons and given the terrorist and insurgent groups that continue to plan and execute attacks with little to no warning. *See* U.S. DEPARTMENT OF STATE, Afghanistan, https://travel.state.gov/content/travel/en/international-travel/International-Travel-Country-Information-Pages/Afghanistan.html; *see also* U.S. DEPARTMENT OF STATE, Afghanistan, https://travel.state.gov/content/travel/en/traveladvisories/traveladvisories/afghanistan-advisory.html.  Given the circumstances, Plaintiffs clearly need immediate relief.

### iii.    *Plaintiffs Are Likely to Succeed on the Merits of the Case*

51.    As set forth in detail herein and above, Plaintiffs are extremely likely to succeed on the merits of the case.  In April 2013, IFONE was given a permit and written approval authorizing it to have space and provide internet services to the NATO contractors and troops at Kandahar Airfield in Afghanistan.  (*See* **Exhibit 1, Enclosure 4-6**).  This written authorization was not provided by just anyone.  Rather, after substantive and procedural review, it was granted by the Garrison Commander of Kandahar Airfield and the COMKAF Commander and has been maintained and expanded since due to the mission-critical nature of IFONE's services.  (*See* **Exhibits 1-7**).

52.    Defendants have taken advantage of the change in command to undermine IFONE's permit and authorization, in favor of a single contractor.  At no time was IFONE advised to halt its installation efforts or expenditures and was led to believe, right up to the withdrawal of authorization, that it had a place.  Neither was IFONE given a chance to defend itself from these sneak attacks.  In fact, at the military command's direction, AAFES purported to terminate IFONE's Contract with one-third (1/3) of the required notice time and advised IFONE that it would be outside the wire within weeks, leaving IFONE exposed to hostile agents.

16

53.     Not coincidentally, it was not until the time IFONE provided a plan to upgrade services that its permit and prior authorization were summarily revoked by AAFES, using the same tactics as it had previously.  (*See* **Exhibits 1 & 8**).  Nor did the government provide any valid justification for withdrawing authorization and eliminating any competition.

54.     CICA requires full and open competition. 41 U.S.C. § 3301.  Only in limited circumstances can the Government not award contracts with full and open competition.  41 U.S.C. §§ 3303–05.  Even the limited circumstances that allow the Government to award sole-source contracts (or other contracts of the like) still promote maximized competition and safeguard competition. *Id.*

55.     DODI 3020.41 provides that a risk of premature loss must be assessed to ensure that critical capabilities are maintained.  *See* DODI 3020.41, at p. 13 https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodi/302041p.pdf.  DODI 3020.41 requires the Geographic Combatant Commanders and the Commander of the United States Special Operations Command and the General to plan for and integrate contracted support in all combatant commander-directed military operations.  The Government has not performed a risk assessment, nor has it prepared a mitigation plan for obtaining IFONE's services from alternative sources.  *Id.* Additionally, DODI 3020.41 states that contractors authorized to accompany the force who are employed in support of a DOD mission are considered to be DOD-sponsored personnel and theater access to bases should include subcontractors whose personnel are also tracked as part of a mission-essential contract.  *Id.* at pp. 15, 17.  The Government violated DODI 3020.41 when it revoked IFONE's theater access to Kandahar Airfield, despite IFONE being considered DOD-sponsored personnel by virtue of their other mission-critical contracts supporting DOD operations.

56.     DFARS 237.7603 provides for solicitations provisions and contract clauses for

continuation of essential contractor services and notice of continuation for those services; this DFARS provision also requires mission-essential contractor plans to be facilitated in crises, like a pandemic.  48 C.F.R. § 237.7306.  DFARS 237.7603 is reinforced via Memoranda from the Office of the Under Secretary.  *See* Office of the Under Secretary Memorandum dated March 5, 2020, https://www.acq.osd.mil/dpap/policy/policyvault/Continuation_of_Essential_Contractor_Services_DPC.pdf.  This Memorandum reminds Contracting Officers of their obligations to use DFARS 252.273-7024 and 252.273-7023 (as prescribed by 237.7603) in all solicitations for mission-essential functions and evaluate contracts to determine whether the clause should be appropriately added.  The Government has violated DFARS 237.7603 by failing to adhere to these requirements and implement mission-essential contractor plans to ensure the continued performance of mission-essential services.

57.    Class Deviation ("CD") 2020-O0002 (and its predecessors,[6] including the one in place when IFONE's follow-on vendor contract was awarded in 2014) require Contracting Officers to use the procedures in the deviation instead of specific DFARS provisions when the acquisition is for the support of operations in Afghanistan.  *See* CD 2020-O0002 at https://classdeviations.com/2020-O0002 (the memorandum for same is accessible online at https://www.acq.osd.mil/dpap/policy/policyvault/Class_Deviation_2020-O0002.pdf).  CD 2020-O0002 is valid through December 31, 2021.  CD 2020-O0002 authorizes a DOD preference for and limits competition to products or services from Afghanistan, a central Asian state, or the

---

[6]    The Class Deviations preceding 2020-O0002 are:  CD 2019-O0004 (expired December 31, 2019, at https://classdeviations.com/2019-O0004); CD 2017-O0003 (expired December 31, 2018, at  https://classdeviations.com/2017-O0003);  CD  2016-O0004  (expired  December  31,  2016,  at https://classdeviations.com/2016-O0004);  CD  2014-O0014  (expired  December  31,  2015,  at https://classdeviations.com/2014-O0014);  CD  2013-O0007  (expired  December  31,  2014,  at https://classdeviations.com/2013-O0007).

Southern Caucasus when acquiring products or services (other than small arms) in support of operations in Afghanistan.  In terminating a properly issued and authorized contract for services (internet services, in particular) in support of operations in Afghanistan from a business principally located in Afghanistan without proper justification for same, the Government violated CD 2020-O0002.  The effect of the Government's improper termination of IFONE is that the contracts for services that will necessarily follow once IFONE is unable to access the base to perform under its contracts, will be awarded to and performed by the only other ISP at Kandahar Airfield, DHI, which is an American company, headquartered in Houston, Texas.  Improperly terminating IFONE in favor of DHI violates the DOD preference and limited competition directive for use of Afghanistan-based services.  The violation of CD 2020-O0002 also violates U.S. policy, as the policy behind the Deviations is to increase Afghan employment, improve the Afghan economy, and build beneficial relationships with Afghan service providers.

58.     The Defense Contingency Contracting Handbook ("DCCH") implements and interprets DOD directives, regulations, and law.  Though handbooks in the non-Government context are generally reference guides, handbooks issued by the Government are unique in that they showcase how a certain regulation, policy, directive, law, among other guidance, is interpreted and implemented within a Department or Agency.  In short, a handbook issued by an official Government source sets the standard for how relevant Government personnel should act. Without an official handbook, Government personnel would be left to interpret regulations, policies, directives, and law at their own discretion.  Department handbooks necessarily make relevant Government personnel's decisions more reasoned, predictable, and uniform.  Actions inconsistent with Department guidance implementing regulations, law, and policy are arbitrary and cannot stand.  Here, the Government violated regulation, policy, directive, law implemented

and interpreted in the DCCH.  (*See* Defense Contingency Contracting Handbook Version 5, April 2017, Director of Defense Procurement and Acquisition Policy at https://www.acq.osd.mil/dpap/ccap/cc/jcchb/DCC_Handbook_v.5_April2017.pdf (cited herein as "*Handbook*")).   Contingency contracting involves all contracts performed in a contingency environment, which includes military operations.  *See Contingency Contracting*, Defense Pricing and Contracting, https://www.acq.osd.mil/dpap/pacc/cc/index.html.   As such, the DCCH is instructive.  The DCCH defines waste and abuse as losses through lack of competition.  *Handbook*, at p. 24.  Government personnel, including deployed commanders, Contingency Contracting Officers, and acquisition support personnel are directed to take every step possible to ensure that waste and abuse are prevented in contingency environments.  *Id.* at p. 25.  To minimize waste and abuse, these personnel are to "utilize competitive procedures to the maximum extent practicable." *Id.* at pp. 25–26.  The DCCH also implements FAR Part 6, which requires a written justification when using procedures other than full and open competition.  *Id.* at p. 158.  Improperly terminating IFONE and in favor of DHI violates DCCH guidance that reaffirms competitive procurement requirements.   The Government has also violated FAR Part 6 by failing to provide a written justification for using procedures other than full and open competition.

59.   Had the Defendants given even the slightest consideration to CICA, DODI 3020.41, the DFARS, Class Deviation 2020-O0002 and its predecessors, and the Defense Contingency Contracting Handbook, or any other applicable law or regulation, they would have realized that their retraction was an egregious violation of U.S. law, policy, and military practice.  Defendants should have realized that retracting IFONE's authorization would be an unjust and wrongful act.

60.   The actions of the Defendants retracting IFONE's authorization were in direct violation of CICA and other applicable law and regulation.  Defendants' failure to consider CICA

and related initiatives is particularly egregious, especially now that this is the second time the Government attempted to exclude IFONE from fair and open competition in favor of DHI.

61.     In the first lawsuit against DOA, DOD, and AAFES, AAFES claimed primacy, which did not apply and was an overreach.  Here, the second time AAFES has intentionally attempted to exclude IFONE from full and open competition in violation of CICA, it does not pretend to provide a justification, or even a pretext, only the military's direction.  Defendants' arbitrary actions have led them to cut off IFONE from serving people even they agree IFONE should be able to service and are mission-critical.

62.     The Government's misconduct has also allowed DHI to maintain a monopoly of substandard, overpriced internet service to the brave men and women at Kandahar Airfield.

63.     IFONE tried to protest the Defendants' arbitrary and capricious action.  (*See* **Exhibit 1**, attached hereto).  However, the Defendants have ignored and summarily rejected IFONE's efforts in this regard.  (*See* **Exhibit 2**, attached hereto).  By doing so, the Government has further compounded their wrongdoing by shamelessly denying IFONE due process under, and equal protection of, the law.  Such egregious violations of IFONE's rights are not justifiable, even in a war zone.  IFONE needs immediate protection from this Court for the Defendants' blatant disregard of IFONE's rights and the protection of competition.

64.     Not only was the retraction of Plaintiffs' permit done without consideration of CICA, but Defendants failed to provide any justification for its termination.  For all of these reasons, Defendants' retraction is arbitrary and capricious, is a violation of the laws of the United States and is a violation of CICA and DODI 3020.41, the Defense Acquisition Regulations System ("DFARS"), Class Deviation 2020-O0002 and its predecessors, and the Defense Contingency Contracting Handbook.  As a result, that retraction cannot be upheld, and should be immediately

vacated.  Further, an injunction should be issued preventing the retraction from being enforced and restoring the order status quo as of January 26, 2021.

65.     It is evident that Plaintiffs' likelihood of success on the merits is great.  Thus, to protect the rights and interests of IFONE, this Court should grant the injunctive relief requested.

### iv.     *The Balance of Hardships Tilts in Plaintiff's Favor*

66.     The evidence presented herein clearly shows that granting Plaintiffs' requested injunctive relief will not create a hardship for the Defendants.  Defendants have not stated any reason for the termination of Plaintiffs' Contract.  Further, Defendants failed to even consider CICA or DODI 3020.41, the DFARS, Class Deviation 2020-O0002 and its predecessors, and the Defense Contingency Contracting Handbook before issuing the retraction because the result of IFONE's termination is that there will only be one (1) ISP to service Kandahar Airfield. Because IFONE will be forced to breach its commercial contracts because it cannot access Kandahar Airfield to service the base, the only other ISP on the base—DHI—will assume IFONE's contracts. This amounts to a closed and unfair competition for contracts, both Government ISP contracts and commercial contracts where Government authorization is required for access.  Vacating the wrongful retraction of Plaintiffs' rights will have zero negative impact on the rights or expectations of the Defendants.  Nor would waiting the two (2) weeks needed from notice of space cause any great hardship on Defendants.

67.     Conversely, without the injunctive relief sought, Plaintiffs are the only party who will continue to experience hardship in the form of:  being victims of an improper violation of Federal competition in procurement law; losing the value of the time, money, and equipment expended to fulfill their contractual obligations to the men and women serving at Kandahar Airfield; and continuing to suffer adverse economic effects without due process required by law.

68.     As such, the balance of hardship weighs heavily in Plaintiffs' favor, thereby justifying the injunctive relief sought.

### v.     *The Public Interest Will Be Served by Injunctive Relief*

69.     Finally, it is important that the public interest be served by ensuring fair and proper administrative actions.

70.     No public interest is served by violating Federal competitive procurement law. Further, Plaintiffs did nothing wrong here and were victimized by an agency overreaching its bounds and authority.  It serves the public interest to make sure government agencies do not become laws unto themselves, and to make sure they remain creatures of limited power that exist to serve the public interest, not themselves.

71.     No public interest is served by depriving Plaintiffs or the Government of full, fair, and open competition.

72.     Further, no public interest is served by government agencies granting rights and then arbitrarily and capriciously revoking those rights.  When the Government acts, it must act for a legitimate reason, not on a whim or to further anti-competition initiatives.

73.     On the positive side, the requested injunction would promote competition, and help provide better internet service to NATO troops and contractors at the Kandahar Airfield. Providing superior internet service to the U.S. forces and contractors at Kandahar is in the best interest of the public.  IFONE's investments provide a faster, more reliable, and uninterrupted secure connection at a more economical price.

74.     As a result of this monopolistic maneuver by the government, DHI will be the only ISP at Kandahar.  Thus, it must be added that the prevention of this internet service monopoly by DHI is also in the best interest of the public.  The need to prevent the formation of such monopolies

has been recognized by the Government which encourages competition between companies who desire to provide services to the troops.  The Defendants' actions, however, run counter to this pro-competition policy, and will have the unfortunate result of forcing our troops to purchase lower quality, higher priced internet service.  If the Defendants' misconduct is not corrected, DHI will be deprived of competition at Kandahar Airfield.  If IFONE is allowed to reenter the market, the U.S. contractors and troops will have access to more economical and better quality communication services.

75.     Thus, injunctive relief sought by Plaintiffs herein is justified and necessary.

**B.     Declaratory Judgment**

76.     The foregoing allegations are incorporated herein as fully restated.

77.     Defendants' acts in violation of CICA constitute agency actions that are arbitrary and capricious, are abuses of discretion, and are not in accordance with law.

78.     Defendants' acts in violation of DODI 3020.41 constitute agency actions that are arbitrary and capricious, are abuses of discretion, and are not in accordance with law.

79.     Defendants' acts in violation of DFARS 237.7603 constitute agency actions that are arbitrary and capricious, are abuses of discretion, and are not in accordance with law.

80.     Defendants' acts in violation of Class Deviation 2020-O0002, and its predecessors, constitute agency actions that are arbitrary and capricious, are abuses of discretion, and are not in accordance with law.

81.     Defendants' acts in violation of the Defense Contingency Contracting Handbook constitute agency actions that are arbitrary and capricious, are abuses of discretion, and are not in accordance with law.

82.     Based upon the facts stated herein and pursuant to 5 U.S.C. § 703(2), Plaintiffs

request this Court to declare, adjudge, decree and hold:  that Defendants failed to consider and violated CICA; that Defendants failed to consider DODI 3020.41, that Defendants failed to consider the DFARS, that Defendants failed to consider Class Deviation 2020-O0002 and its predecessors, and that Defendants failed to consider the Defense Contingency Contracting Handbook; that the termination of the Contract was donfe in violation of full, fair, and open competition requirements of CICA; that the termination of the Contract was done in violation of providing theater access to bases for subcontractors as part of any mission-essential contract requirements of DODI 3020.41; that the termination of the Contract was done in violation of performing risk assessment and mitigation plans for ensuring critical capabilities are maintained requirements of DODI 3020.41; that the termination of the Contract was done in violation of DFARS 237.7603; that the termination of the Contract was done in violation of acquisition from Afghanistan sources preferences in Class Deviation 2020-O0002; that the termination of the Contract was done in violation of waste and abuse mitigation policies required by the Defense Contingency Contracting Handbook; that the termination of the Contract was done in violation of FAR Part 6, as implemented and required in contingency situations by the Defense Contingency Contracting Handbook; that the retraction of Plaintiffs' rights is null and void; and that the April 2013 approval authorizing Plaintiffs access, space, and to provide internet services to the NATO troops and contractors at Kandahar Airfield must be reinstated.

83.     IFONE pleads this request for declaratory relief in addition to, and as an alternative to, its demand for injunctive relief.  Even if IFONE has somehow not met its burden of proof with respect to the requested injunction, it has clearly met the burden of proof needed for a declaration and for this Court to issue a finding that the Defendants acted arbitrarily and capriciously, and that

their actions also amounted to a violation of CICA and DODI 3020.41, the DFARS, Class

Deviation 2020-O0002 and its predecessors, and the Defense Contingency Contracting Handbook.

**C.**    **Attorneys' Fees**

84.    The foregoing allegations are incorporated herein as fully restated.

85.    Plaintiffs are entitled to an award of attorney fees and costs under 28 U.S.C. § 2412,

and under 5 U.S.C. § 504.

86.    Plaintiffs have been forced to retain legal counsel to protect and enforce its rights

against Defendants' improper, and unjust actions that violate Federal law.

87.    Plaintiffs satisfy all party eligibility requirements and seeks reasonable attorneys'

fees and expenses under 28 U.S.C. § 2412 and 5 U.S.C. § 504.

88.    Defendants' actions are not legally or substantially justified.  Any defense by

Defendants to this action is vexatious, litigation-multiplying, unconscionable, in bad faith and for

the purposes of delay.

89.    Pursuant to 28 U.S.C. § 2412 and 5 U.S.C. § 504, Plaintiffs request this Court to

award reasonable attorneys' fees, costs and expenses associated with bringing this action, as

mandated by statute or in the reasonable discretion of this Court.

## V.  Prayer

90.    Wherefore, Plaintiffs respectfully request that this Court issue a judgment to:

(a)    Hold that Plaintiffs have prevailed on their claims and causes of action as alleged herein;

(b)    Declare Defendants' actions are arbitrary, capricious, and contrary to law and applicable regulation;

(c)    Declare that the Defendants have violated CICA;

(d)    Declare that the Defendants have violated DODI 3020.41;

26

(e)     Declare that the Defendants have violated the DFARS;

(f)     Declare that the Defendants have violated Class Deviation 2020-O0002 and its predecessors;

(g)     Declare that the Defendants have violated FAR Part 6

(h)     Declare that the Defendants have violated the Defense Contingency Contracting Handbook;

(i)     Temporarily restrain, preliminarily and permanently enjoin, vacate and set aside the retraction of Plaintiffs' authorization for space, access and to provide internet services to NATO troops and contractors issued in April 2013 and continuing to the present;

(j)     Issue a temporary restraining order, as well as preliminary and permanent injunctions restoring Plaintiffs' authorization for space "inside the wire" at Kandahar Airfield and to provide internet services to the NATO troops and contractors at the Kandahar Airfield;

(k)     Entitle Plaintiffs to apply for their attorneys' fees and costs, interest, and Equal Access to Justice fees in accordance with applicable law, regulation, and Court rules; and

(l)     Grant such other relief as the Court deems appropriate.


Respectfully submitted,

Bryant S. Banes
Texas State Bar No. 24035950
Federal ID No. 31149
Sarah P. Harris
Texas State Bar No. 24113667
Federal ID No. 3421904
Neel, Hooper & Banes, P.C.
1800 West Loop South, Suite 1750
Houston, Texas  77027
Telephone:  (713) 629-1800
Facsimile:  (713) 629-1812
bbanes@nhblaw.com
sharris@nhblaw.com

**ATTORNEYS FOR PLAINTIFFS**