United States District Court
Southern District of Texas
**ENTERED**
November 01, 2022
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

|  |  |  |
|---|---|---|
| IFONE NEDA INTERNET SERVICE, *et al.*, | § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Case No. 4:21-cv-330 |
| ARMY & AIR FORCE EXCHANGE SERVICE, *et al.*, | § § § | |
| *Defendants*. | § § § | |

## MEMORANDUM AND ORDER

Pending before the Court are Defendants Army & Air Force Exchange Service ("AAFES"), Department of the Army ("Army"), and Department of Defense's ("DOD") (collectively, "Agency Defendants") motion to dismiss Plaintiffs' Second Amended Complaint, ECF No. 70, as well as individuals Matthew T. Adamczyk Lt. Col, Kristin Mazur, James S. Gordon, Jake Horn, J. Scott Pine, Daniel S. Roney, and Does 1-100's ("Individual Defendants") motion to dismiss Plaintiffs' Second Amended Complaint, ECF No. 89, (the Agency Defendants and Individual Defendants are referred to collectively as "Defendants").[1]

---

[1] On October 13, 2021, based on the parties' consent, the case was transferred to this Court to conduct all proceedings pursuant to 28 U.S.C. § 636(c). Consent, ECF No. 111; Order Transferring, ECF No. 112.

Plaintiffs IFONE NEDA Internet Service, Inc., IFONE, Inc., Anthony Florian, and Catheren Decosto Mariscal (collectively, "IFONE") bring constitutional and state causes of action against Defendants. IFONE's claims stem from the termination of a contract permitting IFONE to provide internet service to U.S. troops and contractors at Kandahar Airfield in Afghanistan, as well as Defendants barring Florian and Mariscal from Kandahar Airfield. Pls.' Second Am. Compl., ECF No. 43 ¶¶19, 26, 49. IFONE alleges that Defendants' actions violated the First and Fifth Amendments to the United States Constitution and gave rise to Texas state law causes of action against the Individual Defendants for civil conspiracy, conversion, tortious interference with contracts, and tortious interference with prospective relations.

The Court held a hearing on Defendants' motions to dismiss and counsel presented their arguments. Based on a thorough review of the record, the briefing, the argument of counsel, and the applicable law, the Court determines it lacks subject matter jurisdiction over IFONE's claims. First, the Court of Federal Claims has exclusive jurisdiction over IFONE's Fifth Amendment taking claim against Agency Defendants. Second, IFONE's Administrative Procedure Act claims based on the First and Fifth Amendment and various federal regulations are moot because the

Court cannot grant IFONE the relief requested. Third, pursuant to the Westfall Act,[2] the United States of America ("USA") is substituted for Individual Defendants as defendant in IFONE's Texas state law claims. Accordingly, because the United States does not waive sovereign immunity over state law claims, the Court lacks subject matter jurisdiction over these claims. Finally, IFONE's constitutional claims against the Individual Defendants present a new *Bivens*[3] context and the Court declines to extend *Bivens* to recognize it. Therefore, the Court does not have subject matter jurisdiction over those claims.

IFONE has raised a variety of arguments aimed at convincing the Court that it has subject matter jurisdiction. Despite these myriad and sometimes confusing arguments, however, the simple fact is that the Court of Federal Claims has exclusive jurisdiction over the claims asserted. At its heart, this is a suit against the Government for money damages. Since U.S. military forces no longer control Kandahar Airfield, the Court cannot reinstate IFONE's services contract. The only potential relief available is money damages. Because Plaintiffs claim $3.4 million in damages, the Court cannot grant IFONE that relief either because the claim is above

---

[2] 28 U.S.C. § 2679(d)(1) provides that "[u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant."

[3] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

the statutory jurisdictional limit of $10,000 for money damages claims against the United States Government in district court. Congress has invested the Court of Federal Claims with sole jurisdiction over claims against the United States for money damages above $10,000. Therefore, this Court has no basis for subject matter jurisdiction over any of Plaintiffs constitutional or statutory claims against the Agency Defendants.

Accordingly, IFONE's Second Amended Complaint is DISMISSED.

## I.    BACKGROUND

On September 22, 2014, IFONE, Inc. and AAFES executed a contract for internet services ("contract"). Contract No. ATD-14-008, ECF No. 70-2 at 120. Under the contract, IFONE, Inc. was permitted to offer internet access to individual living quarters in-room, Wi-Fi hotspots, and any locations AAFES designated. *Id*. at 121. The contract is a concession contract, allowing authorized customers (not AAFES) to procure services from IFONE, Inc. Gordon Aff., ECF No. 70-2, at 3 ¶ 4. The contract contains a termination clause and a business risk clause. The termination clause provided that "all other[4] concession contracts may be terminated in whole or in part by either party upon a minimum of thirty (30) days' notice, in writing to the other party." Contract No. ATD-14-008, ECF No. 70-2 at 34.

---

[4] Other contracts included "barber, beauty, beauty with nails, Paul Mitchell, and vending contracts" and required a ninety (90) day notice for termination. Contract No. ATD-14-008, ECF No. 70-2 at 34.

The business risk clause stated:

> The contractor understands and agrees that all business risk remains with the contractor. Business risk includes, but is not limited to, contractor's investment in equipment and supplies, permit and license fees, employee wages, and lost sales and income resulting from all operational changes or contract termination. The military sites envisioned under this contract are part of military operations. As such, the military will make appropriate decisions in the prosecution of the military operations with limited or no consideration of contract activities. Military decisions about the necessity, location, and duration of any services may change over time and are not controlled by the Exchange. It is expressly understood and agreed that neither the Exchange nor any other agency or instrumentality of the United States is or will be liable to concessionaire for costs of concessionaire's investment in equipment and infrastructure for this contract.

*Id*. at 122. The contract also contains a disputes clause requiring the contractor to submit claims to the contracting officer for a written decision. *Id*. at 35. That decision can be appealed within 30 calendar days to the Armed Services Board of Contract Appeals. *Id*. The contract was amended seven times. Gordon Aff., ECF No. 70-2, at 5 ¶ 6.

On January 15, 2021, acting Defense Secretary Christopher Miller announced that U.S. force levels in Afghanistan had been reduced to 2,500.[5] This reduction was part of the Department of Defense's overall plan to remove all troops from

---

[5] Press Release, Department of Defense, Statement by Acting Defense Secretary Christopher Miller on Force Levels in Afghanistan (Jan. 15, 2021), https://www.defense.gov/News/Releases/Release/Article/2473337/statement-by-acting-defense-secretary-christopher-miller-on-force-levels-in-afg/.

Afghanistan no later than May 2021.[6]

On January 26, 2021, AAEFS terminated the contract and ordered IFONE Inc. to remove their equipment from Kandahar Airfield within thirty days. ECF No. 43 ¶ 26. Plaintiffs allege that AAEFS's stated reason for the termination was that Kandahar Airfield was reducing its boundaries and IFONE Inc.'s equipment was located outside of the new boundaries. *Id*. ¶¶ 25-26. Plaintiffs further allege that, on February 27, 2021, Mariscal and Florian were barred from Kandahar Airfield for taking pictures of operations there. *Id*. ¶ 48. IFONE's remaining personnel departed Kandahar Airfield on March 11, 2021. *Id*. ¶ 46.

On August 30, 2021, Secretary of Defense Lloyd Austin III announced that all U.S. forces had been withdrawn from Afghanistan.[7]

## II.     THE LEGAL STANDARD FOR MOTIONS TO DISMISS.

Article III requires a federal court to "satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 87 (1998)). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate

---

[6] *Id*.

[7] Press Release, Department of Defense, Statement by Secretary of Defense Lloyd Austin III On the End of the American War in Afghanistan, (Aug. 30, 2021), https://www.defense.gov/News/Releases/Release/Article/2759181/statement-by-secretary-of-defense-lloyd-austin-iii-on-the-end-of-the-american-w/.

the case." *Krim v. PCOrder.com*, 402 F.3d 489, 494 (5th Cir. 2005) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

The burden of proof for a 12(b)(1) motion to dismiss is on the party asserting jurisdiction, who must prove by a preponderance of the evidence that the court has jurisdiction based on the complaint and evidence. *Gilbert v. Donahoe*, 751 F.3d 303, 307 (5th Cir. 2014). A court can find that subject matter jurisdiction is lacking based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012). In ruling on a Rule 12(b)(1) motion, courts must "accept all factual allegations in the plaintiff's complaint as true." *Vof Den Norske Stats Oljeselskap As v. HeereMac*, 241 F.3d 420, 424 (5th Cir. 2001). Nevertheless, "a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id*. (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

## III. THE COURT LACKS SUBJECT MATTER JURISDICTION OVER IFONE'S CLAIMS.

IFONE asserts four causes of action. First, IFONE asserts that the Government's decision to terminate its contract and, by extension, its subcontracts,

violated IFONE's rights under the Fifth Amendment of the United States Constitution ("Takings Claim"). ECF No. 43 ¶¶ 51-56. IFONE seeks $3,400,000 in damages and declaratory relief from Agency Defendants for its Takings Claim. *Id*. ¶¶ 83, 85. Second, invoking the Administrative Procedures Act (the "APA"),[8] IFONE alleges that the decision to retract its permit authorizing it to provide services at Kandahar Airfield violated various laws and regulations, including the First and Fifth Amendments to the United States Constitution, the Competition in Contracting Act, FAR Subparts 6.3, 44.2 and 9.4, COMKAF's own regulations ("APA claim"). *Id*. ¶¶ 57-64, 85-91. For its APA claim, IFONE seeks an order compelling Agency Defendants to vacate their decision and reinstate IFONE's permit and authorization, and, in the alternative, a declaratory judgment. *Id*. ¶¶64, 85-91. Third, IFONE alleges that Individual Defendants violated their rights under the Fifth Amendment to the United States Constitution. *Id*. ¶ 51. Finally, IFONE asserts Texas state law claims for civil conspiracy, conversion, tortious interference with contracts, and tortious interference with prospective relations against Individual Defendants. As described below, the Court lacks subject matter jurisdiction over each of these causes of action. *Id*. ¶ 65.

---

[8]APA, 5 U.S.C. § 551, et seq., governs the way federal administrative agencies may propose and establish regulations. It also creates a formal process for federal courts to review agency decisions.

**A. The Court of Federal Claims Has Exclusive Jurisdiction Over IFONE's Takings Claim Against the Agency Defendants.**

The Agency Defendants contend that district court review is precluded because jurisdiction over IFONE's Takings Claim against Agency Defendants is vested in the Court of Federal Claims. ECF No. 70 at 20-23. IFONE responds that the Court of Federal Claims is an inappropriate venue to resolve its claim. Pls.' Opp. to MTD, ECF No. 78 at 15-17, 29-30. As explained below, the Court concludes that the Court of Federal Claims has exclusive jurisdiction over IFONE's Takings Claim.

### 1. *The United States must waive sovereign immunity to be subject to suit.*

"'It is well settled that the United States may not be sued except to the extent that it has consented to suit by statute.'" *Alabama-Coushatta Tribe of Texas v. United States*, 757 F.3d 484, 488 (5th Cir. 2014) (quoting *Koehler v. United States*, 153 F.3d 263, 265 (5th Cir. 1998)). Further, "[w]here the United States has not consented to suit or the plaintiff has not met the terms of the statute the court lacks jurisdiction and the action must be dismissed." *Koehler*, 153 F.3d at 266. "[A] waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996).

Plaintiff asserts that there is a waiver of sovereign immunity under the APA. ECF No. 78 at 16. Defendants respond that the Tucker Act provides an adequate remedy such that the APA's waiver is not available. ECF No. 70 at 30. The APA provides a limited waiver of sovereign immunity for relief seeking non-monetary

damages, but only if no other adequate remedy exists. *Christopher Vill., L.P. v. United States*, 360 F.3d 1319, 1328 (Fed. Cir. 2004). Here, the Tucker Act, 28 U.S.C. § 1491, provides a litigant with the ability to sue for money damages in the Court of Federal Claims, which is an adequate remedy that precludes an APA waiver of sovereign immunity in other courts. *Id.*

### 2. *The Tucker Act and jurisdiction over claims against the United States.*

"[T]he Tucker Act, effects a waiver of sovereign immunity." *United States v. Mitchell*, 463 U.S. 206, 215 (1983). Its companion statute, the Little Tucker Act vests concurrent jurisdiction in the Court of Federal Claims and the federal district court over any "claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States." 28 U.S.C. § 1346(a)(2). However, if the claim exceeds $10,000, the Tucker Act grants *exclusive* jurisdiction to the Court of Federal Claims. 28 U.S.C. § 1491(a)(1). The Fifth Circuit has recognized that the "adjudication in a federal district court of a lawsuit that falls within the exclusive jurisdiction of the Court of Federal Claims would seriously undermine the purposes behind the Tucker Act." *Amoco Prod. Co. v. Hodel*, 815 F.2d 352, 358-59 (5th Cir. 1987). Therefore, if the Court of Federal Claims has exclusive jurisdiction over IFONE's Takings Claim, the Court must it dismiss for lack of subject matter jurisdiction.

Under the Tucker Act, the Court of Federal Claims' exclusive jurisdiction is predicated on satisfying the following three conditions: (1) the action is against the United States; (2) the action is founded upon the Constitution, federal statute, executive regulation, or government contract; and (3) the action seeks monetary relief in excess of $10,000. *Amoco*, 815 F.2d at 359 (5th Cir. 1987) (citing *Portsmouth Redev. & Hous. Auth. v. Pierce*, 706 F.2d 471, 473 (4th Cir. 1983)). The Court addresses each condition in turn.

### 3. *The Court of Federal Claims has exclusive jurisdiction over IFONE's constitutional claims against Agency Defendants.*

Based on the foregoing, the question before the Court is whether the three conditions set forth in the Tucker Act exist. The first condition is easily satisfied. AAEFS "is a recognized agency of the United States." *Martin v. Hyundai Translead, Inc.*, No. 3:20-CV-2147-K, 2020 WL 6701806, at *2 (N.D. Tex. Nov. 13, 2020). Suits against "federal agencies . . . are suits against the United States." *Maleche v. Solis*, 692 F. Supp. 2d 679, 685 (S.D. Tex. 2010). The second condition is also met because IFONE's Takings Claim is founded on the Fifth Amendment to the United States Constitution. ECF No. 43 ¶¶ 51-56.[9] Finally, IFONE seeks more than $10,000. *Id*. ¶ 83 ("The Plaintiffs seek damages against AAFES and the individual Defendants in a sum currently estimated at $3,400,000."). IFONE raises three

---

[9] This action more properly sounds in contract; however, the Court need not resolve that question as IFONE's stated basis for their claim falls with the sources of law listed in 28 U.S.C. § 1491.

arguments regarding why the Court of Federal Claims does not have exclusive jurisdiction over its Takings Claim.

First, IFONE contends that "if [district court] review is refused, Plaintiff will be denied its requested relief, seeking declaratory judgment for the Government's wrongdoing." ECF No. 78 at 28. While it is true that "the Court of Federal Claims 'does not have the general equitable powers of a district court to grant prospective relief,'" *Maine Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1330 (2020) (quoting *Bowen v. Massachusetts*, 108 S. Ct. 2722, 2737 (1988)), that is not a ground for district court jurisdiction. "Absent other grounds for district court jurisdiction, a claim is subject to the Tucker Act and its jurisdictional consequences if, in whole or in part, it explicitly or 'in essence' seeks more than $10,000 in monetary relief from the federal government." *Kidwell v. Dep't of Army, Bd. for Corr. of Military Records*, 56 F.3d 279, 284 (D.C. Cir. 1995). Here, because IFONE's "complaint specifically mentions monetary relief, the plaintiff in this case is subject to the Tucker Act." *Bliss v. England*, 208 F. Supp. 2d 2, 7 (D.D.C. 2002).

Nevertheless, IFONE appears to argue that its prayer for declaratory relief should be evaluated independently from its monetary claims. Surreply in Opp. to Mot. to Dismiss, ECF No. 92-1 ("the claims brought in this Court are independent,

valid causes of action that are not committed to the jurisdiction of the CFC").[10]

However, even if IFONE sought *only* a declaratory judgment as relief for its Takings

Claim—which they do not—Court of Federal Claims jurisdiction would still apply.

This is because plaintiffs may not "bypass Tucker Act jurisdiction by converting

complaints which 'at their essence' seek money damages from the government into

complaints requesting injunctive relief or declaratory actions." *Kidwell*, 56 F.3d at

284. In determining whether a suit is properly heard in district court or the Court of

Federal Claims, courts "look beyond the form of the pleadings to the substance of

the claim." *Suburban Mortg. Assocs., Inc. v. U.S. Dep't of Hous. & Urb. Dev.*, 480

F.3d 1116, 1124 (Fed. Cir. 2007). Requested relief must have "'considerable value'

independent of any future potential for monetary relief" to escape the Tucker Act's

exclusive jurisdiction. *Kidwell*, 56 F.3d at 284.

According to IFONE, a declaratory judgment would have considerable value

because it would "relieve the injury by recognizing the Government's infringement

on the corporate Plaintiffs' constitutional rights and violation of the Government's

regulations." ECF No. 78 at 43. However, prevailing in the Court of Federal Claims

would provide no less recognition that IFONE had been wronged than a declaratory

judgment in district court. IFONE provides no basis for the Court to find that

---

[10] The Court notes that IFONE attached its surreply as an exhibit to a motion for leave to file surreply, and, although that motion was granted, ECF No. 93, failed to separately file it. Nonetheless, the Court considered it in reaching its decision here.

recognition from the district court would be more valuable than from the Court of Federal Claims. More importantly, the actual substance of a declaratory judgment would be a declaration that IFONE is owed money damages from the United States. "A party may not circumvent the Claims Court's exclusive jurisdiction by framing a complaint in the district court as one seeking injunctive, declaratory or mandatory relief where the thrust of the suit is to obtain money from the United States." *Christopher Vill.*, 360 F.3d at 1328 (quoting *Rogers v. Ink*, 766 F.2d 430, 434 (10th Cir. 1985)); *accord Bakersfield City Sch. Dist. of Kern County v. Boyer*, 610 F.2d 621, 628 (9th Cir. 1979) ("[I]t is firmly established that, where the real effort of the complaining party is to obtain money from the federal government, the exclusive jurisdiction of the court of claims over non-tort claims exceeding $10,000 cannot be evaded or avoided by framing a district court complaint to appear to seek only injunctive, mandatory or declaratory relief against government officials or the government itself."). A "complaint seeks relief other than money damages within the meaning of the Administrative Procedure Act only if the equitable relief sought has a significant prospective effect or considerable value apart from merely determining monetary liability of the government." *Gray v. Rankin*, 721 F. Supp. 115, 119 (S.D. Miss. 1989) (quotation marks and citations omitted). IFONE seeks no prospective relief for their Takings Claim other than money damages, nor can they. The United States government has withdrawn all troops from Afghanistan,

including from Kandahar Airfield.[11] Thus, Plaintiffs' contract cannot be reinstated, and the only available remedy is money damages.

IFONE's second argument fares no better. IFONE contends that the district court has jurisdiction because amendments to the United States Constitution "act as a waiver of sovereign immunity for constitutional causes of action against the Government." ECF No. 78 at 21-22. That is not the law. Consent to suit in district court requires a statute which explicitly waives sovereign immunity for the claimed constitutional deprivation. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). As explained above, the Tucker Act waives sovereign immunity for IFONE's Takings Claim and vests jurisdiction in the Court of Federal Claims.

Finally, IFONE argues that the Court of Federal Claims does not have jurisdiction over its Takings Claim against AAEFS because AAEFS is a nonappropriated fund instrumentality.[12] ECF No. 78 at 16. This distinction is not relevant here. AAEFS is an agency of the United States, *Martin*, 2020 WL 6701806, at *2, and suits against "federal agencies . . . are suits against the United States,"

---

[11] Press Release, Department of Defense, Statement by Secretary of Defense Lloyd Austin III On the End of the American War in Afghanistan, (Aug. 30, 2021), https://www.defense.gov/News/Releases/Release/Article/2759181/statement-by-secretary-of-defense-lloyd-austin-iii-on-the-end-of-the-american-w/.

[12] "[T]he term 'nonappropriated fund instrumentality' means the Army and Air Force Exchange Service, Navy Exchange Service Command, Marine Corps exchanges, or any other instrumentality of the United States under the jurisdiction of the armed forces which is conducted for the comfort, pleasure, contentment, or physical or mental improvement of members of the armed forces." 10 U.S.C. § 2488.

*Maleche v. Solis*, 692 F. Supp. 2d 679, 685 (S.D. Tex. 2010).

## B. IFONE's APA Claim Is Moot.

Section 702 of the APA[13] waives the USA's sovereign immunity for actions seeking *non-monetary* relief against federal government agencies. *Alabama-Coushatta*, 757 F.3d 488. The waiver applies both to statutory claims and to "non-statutory causes of action against federal agencies arising under 28 U.S.C. § 1331." *Id*. (citing *Sheehan v. Army & Air Force Exch. Serv.*, 619 F.2d 1132, 1139 (5th Cir. 1980), *rev'd on other grounds*, 456 U.S. 728 (1982)).

IFONE seeks nonmonetary relief for its APA claim in the form of an order compelling Defendants to reinstate its authorization to operate at Kandahar Airfield, *id*. ¶64, and, alternatively, for a declaration "pursuant to the First and Fifth Amendment of the U.S. Constitution and 5 U.S.C. § 703(2)" that "Defendants acted arbitrarily and capriciously, and that their actions also amounted to a violation of" Federal Acquisition Regulation Subparts 6.3,[14] 44.2,[15] and 9.4,[16] Commander Kandahar Airfield Headquarters regulations, the Competition in Contracting Act, 41

---

[13] 5 U.S.C. § 702.

[14] *Subpart 6.3 – Other Than Full and Open Competition*, ACQUISITION.GOV, https://www.acquisition.gov/far/subpart-6.3 (last visited Oct. 31, 2022).

[15] *Subpart 44.2 – Consent to Subcontracts*, ACQUISITION.GOV, https://www.acquisition.gov/far/subpart-44.2 (last visited Oct. 31, 2022).

[16] *Subpart 9.4 -Debarment, Suspension, and Ineligibility*, ACQUISITION.GOV, https://www.acquisition.gov/far/subpart-9.4 (last visited Oct. 31, 2022).

U.S.C. § 253(a) (2008) ("CICA"),[17] Department of Defense Instruction 3020.41,[18] the Defense Federal Acquisition Regulation Supplement ("DFARS"),[19] Class Deviation 2020-O0002 and its predecessors,[20] and the Defense Contingency Contracting Handbook (the "DCCH"),[21] *id.* ¶¶ 90-91. However, the district court is unable to provide the relief requested, rendering IFONE's APA claim moot.

First, as the United States no longer controls Kandahar Airfield, the Court cannot grant IFONE the injunctive relief it seeks.[22] "[A] federal court has no

---

[17] The CICA generally governs competition in federal procurement contracting. KATE M. MANUEL, Cong. RESEARCH SERV., COMPETITION IN FEDERAL CONTRACTING: AN OVERVIEW OF THE LEGAL REQUIREMENTS (2011).

[18] This instruction establishes policy, assigns responsibilities, and provides procedures for OCS, including OCS program management, contract support integration, and integration of defense contractor personnel into contingency operations outside the United States. DoD, Instruction 3020.41: Purpose ¶ 1.a. (Dec. 20, 2011).

[19] The DFARS implements and supplements the Federal Acquisition Regulation ("FAR"). The DFARS contains requirements of law, Department of Defense-wide policies, delegations of FAR authorities, deviations from FAR requirements, and policies/procedures that have a significant effect on the public. The DFARS should be read in conjunction with the primary set of rules in the FAR. *Defense Federal Acquisition Regulation Supplement (DFARS)*, FEDERAL REGISTER, https://www.federalregister.gov/defense-federal-acquisition-regulation-supplement-dfars- (last visited Oct. 31, 2022).

[20] Provides procedures and clauses for acquiring products and services produced in Afghanistan or in countries along a major route of supply to Afghanistan. *Class Deviation—Authority to Acquire* Products *and Services Produced in Afghanistan or in Countries Along a Major Route of Supply to Afghanistan*, https://www.acq.osd.mil/dpap/policy/policyvault/Class_Deviation_2020-O0002.pdf (last visited Oct. 31, 2022).

[21] The DCCH is a document intended to help Department of Defense Contingency Contracting Officers and other Operational Contract Support staff meet the needs of the personnel and organizations they support. *Contingency Contracting -Defense Contingency Contracting Handbook*, DEFENSE PRICING & CONTRACTING, https://www.acq.osd.mil/asda/dpc/cp/cc/ctr-handbook.html (last visited Oct. 31, 2022).

[22] Press Release, Department of Defense, Statement by Secretary of Defense Lloyd Austin III On the End of the American War in Afghanistan, (Aug. 30, 2021),

authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)). A case "must be dismissed when an event occurs while a case is pending . . . that makes it impossible for the court to grant any effectual relief whatever to a prevailing party." *Motient Corp. v. Dondero*, 529 F.3d 532, 537 (5th Cir. 2008) (quotation marks omitted). "A claim becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Id*. (quotation marks omitted).

The facts presented here are similar to those in *Ministry of Oil of the Republic of Iraq v. Kurdistan Region of Iraq*, 634 F. App'x 953, 956 (5th Cir. 2015) (per curiam). In that case, the plaintiff asked the court to award it possession of crude oil extracted from Iraq. *Id*. at 954. While the case was pending, the oil was sold in a foreign jurisdiction. *Id*. at 955. The Fifth Circuit reasoned that the case was moot because no federal court had "the power to grant the [plaintiff's] requested relief." *Id*. at 956. Here, as in *Ministry of Oil*, the Court lacks the power to grant IFONE its requested relief. The United States no longer controls Kandahar Airfield. Therefore, any order compelling Defendants to reinstate IFONE would have no effect.

---

https://www.defense.gov/News/Releases/Release/Article/2759181/statement-by-secretary-of-defense-lloyd-austin-iii-on-the-end-of-the-american-w/.

IFONE's request for declaratory relief is similarly moot. "A claim for declaratory judgment seeks to define the legal rights and obligations of the parties in anticipation of some future conduct, not to proclaim liability for a past act." *Haggard v. Bank of the Ozarks, Inc.*, 547 F. App'x 616, 620 (5th Cir. 2013) (per curiam) (citation omitted). As IFONE can no longer operate at Kandahar Airfield pursuant to Defendants' authorization, it "no longer ha[s] an interest in a court's declaring any right" to do so. *Flaming v. Alvin Cmty. Coll.*, 777 F. App'x 771, 772 (5th Cir. 2019) (per curiam) (citing *Moseley v. Bd. of Educ. of Albuquerque Pub. Sch.*, 483 F.3d 689, 692–93 (10th Cir. 2007)).

Therefore, this Court cannot grant IFONE either of the forms of relief it requests for its APA claim—injunctive or declaratory relief—and, accordingly, must dismiss those claims. *See Ministry of Oil of the Republic of Iraq*, 634 F. App'x at 956 (dismissing case as moot where court lacked the power to grant plaintiff's requested relief). [23]

---

[23] Defendants also argue that the Court lacks jurisdiction because IFONE has failed to exhaust their administrative remedies under the contract. ECF No. 70 at 28. Specifically, Defendants' position is that under the contract's disputes clause, IFONE was required to submit a claim to the contracting officer, that could then be appealed to the Armed Services Board of Contract Appeals. *Id.* IFONE did not take either of these steps. In response, IFONE asserts that its APA claim is not contractual in nature, and, therefore, not subject to the disputes clause in the contract. ECF No. 78 at 18. The Court is skeptical of IFONE's position and finds this line of argument somewhat incomprehensible. Nevertheless, because the Court finds that IFONE's APA claim is moot, it does not reach this argument.

### C. The Court Lacks Jurisdiction Over IFONE's State Law Claims.

The Individual Defendants filed a Certification of Scope of Employment, ECF No. 89-1, and argue that, pursuant to the Federal Employees Liability Reform and Tort Compensation Act of 1988 ("Westfall Act"),[24] IFONE's Texas state law claims against them should be dismissed and the United States should be substituted as the proper defendant. ECF No. 89 at 32. IFONE responds that substitution would be inappropriate because the Individual Defendants' alleged conduct was not within the scope of their employment. Pls.' Opp. to MTD, ECF No. 101 at 26. The Court finds that Individual Defendants were operating within the scope of their employment and substitution is proper.

The Westfall Act provides that, upon the Attorney General or his designated representative's certification that the government employee was acting within the scope of his employment at the time of the allegedly tortious act, the United States may substitute itself as the defendant in the suit. *Counts v. Guevara*, 328 F.3d 212, 214 (5th Cir. 2003). The Attorney General's certification is judicially reviewable. *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 432 (1995). When challenging the Attorney General's certification, plaintiffs have the burden to prove that the employee's conduct was not within the scope of his employment. *Williams v. United States*, 71 F.3d 502, 506 (5th Cir. 1995).

---

[24] 28 U.S.C. § 2679.

"[W]hether an employee is acting within the scope of his employment is a question of state law." *Lanausse v. Fed. Corr. Inst. at Three Rivers*, 34 F. App'x 150 (5th Cir. 2002) (citing *Rodriguez v. Sarabyn*, 129 F.3d 760, 765 (5th Cir. 1997)). "When conducting a scope of employment analysis under the Westfall Act, courts generally apply the law of the state where the conduct occurred." *Doe v. Meron*, 929 F.3d 153, 164 (4th Cir. 2019) (citing 28 U.S.C. § 1346(b)(1)). Here, the question of what state law to apply is not straightforward because the alleged conduct occurred on foreign soil. *See, e.g.,* ECF No. 43 ¶ 19. Although the Fifth Circuit has not yet addressed this issue, numerous courts have concluded that District of Columbia law should be applied under similar circumstances. *See Meron*, 929 F.3d at 164 (Fourth Circuit applying District of Columbia law); *Kashin v. Kent*, 457 F.3d 1033, 1037-38 (9th Cir. 2006) (same); *Rasul v. Rumsfeld*, 414 F.Supp.2d 26, 32 (D.D.C. 2006) (same). In *Meron*, the court explained that "[a]pplying District of Columbia law leads to a 'single, cogent body of law' on the scope of employment issue" and noting that applying District of Columbia law "is also appropriate due to the relationship between the military and the nation's capit[o]l." *Meron*, 929 F.3d at 164. The Court finds this reasoning persuasive and will apply District of Columbia law in its scope of employment analysis.

When determining whether an employee's conduct falls within the scope of his employment, District of Columbia law examines whether (1) the conduct is of

the kind he is employed to perform; (2) the conduct occurs substantially within the authorized time and space limits; and (3) the conduct is actuated, at least in part, by a purpose to serve the employer. *Allaithi v. Rumsfeld*, 753 F.3d 1327, 1330 (D.C. Cir. 2014).

IFONE argues that the Individual Defendants lacked authority to engage in the alleged tortious conduct, and therefore, acted outside the scope of their employment. ECF No. 101 at 30-31. IFONE cites no caselaw in support of its argument and the Court is unable to identify any. To the contrary, "[e]xtensive precedent makes clear that alleging a federal employee violated policy or even laws in the course of her employment . . . does not take that conduct outside the scope of employment." *Smith v. Clinton*, 886 F.3d 122, 126 (D.C. Cir. 2018). "The proper inquiry . . . focuses on the underlying dispute or controversy, not on the nature of the tort, and is broad enough to embrace any intentional tort arising out of a dispute that was originally undertaken on the employer's behalf." *Id.* (quotations marks and citations omitted). Here, broadly speaking, the Individual Defendants are accused of engaging in conduct related to management of contracts, personnel, and equipment at Kandahar Airfield, precisely the kind of conduct they were employed to perform and where they were supposed to perform it.

Furthermore, IFONE makes no argument that the Individual Defendants were not acting, at least in part, to serve their employer. In fact, IFONE makes no

accusation that Individual Defendants acted for their own benefit or purposes at all.

IFONE has not met its burden to show that the Individual Defendants acted beyond

the scope of their employment.

The result would be the same if the Court applied Texas law. As the Texas

Supreme Court explained:

> An employer is liable for its employee's tort only when the tortious act
> falls within the scope of the employee's general authority in furtherance
> of the employer's business and for the accomplishment of the object for
> which the employee was hired. The employee's acts must be of the
> same general nature as the conduct authorized or incidental to the
> conduct authorized to be within the scope of employment. Accordingly,
> if an employee deviates from the performance of his duties for his own
> purposes, the employer is not responsible for what occurs during that
> deviation.

*Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 757 (Tex. 2007).

IFONE argues that where an employee acts without authority, as it alleges the

Individual Defendants did, they act outside of their general authority and the scope

of their employment. ECF No. 101 at 26-27. This overly restrictive reading of Texas

law would limit employer liability for employee actions to those actions that were

authorized. That is not the law. Texas law recognizes that employees may act within

the scope of their employment even when their actions are unauthorized or wrongful.

*Bank of Texas, N.A. v. Glenny*, 405 S.W.3d 310, 317 (Tex. App.—Dallas 2013, no

pet.). Furthermore, the Individual Defendants' alleged conduct was of the "same

general nature as the conduct authorized," *Goodyear*, 236 S.W.3d at 757—

management of contracts, personnel, and equipment at Kandahar Airfield. IFONE also offers no argument that the Individual Defendants alleged conduct was for their own purposes.

Accordingly, the USA is substituted for the Individual Defendants. The USA has not waived sovereign immunity for IFONE's Texas state law claims and they must be dismissed.

### D. The Court Will Not Create A New *Bivens* Action For IFONE's Constitutional Claims Against the Individual Defendants.

To have subject matter jurisdiction over IFONE's constitutional claims against them, the Individual Defendants argue the Court would need to create a new *Bivens* context because the claims differ from those presented in *Bivens* and its progeny.[25] ECF No. 89 at 16. Further, they assert that special factors counsel against creating a new *Bivens* context. *Id*. In response, IFONE contends that their claims do not present a new *Bivens* context, and, even if they did, special factors do not counsel against creating a new *Bivens* context for them. ECF No. 101 at 11-18.

Courts confronting *Bivens* claims generally must determine two questions. First, whether the claims fall into one of the three existing *Bivens* contexts. *Cantu v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019). If the Court determines that the claims do not, the Court must determine if a new context should be recognized. *Id*. The

---

[25] *Bivens*, 403 U.S. at 388; *Davis v. Passman*, 442 U.S. 228 (1979); and *Carlson v. Green*, 446 U.S. 14 (1980).

Court addresses each of these questions in turn.

### 1. IFONE's claims present a new Bivens context.

*Bivens* actions are the product of a court that freely implied rights of action. *Alexander v. Sandoval*, 532 U.S. 275, 287 (2001). The Supreme Court has since determined that creating causes of action is not the proper function of the federal courts. *Id.* ("Raising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals.") (quotation marks omitted). As a result, *Bivens* claims have been limited to the three circumstances under which the Supreme Court has recognized such claims:

> (1) manacling the plaintiff in front of his family in his home and strip-searching him in violation of the Fourth Amendment; (2) discrimination on the basis of sex by a congressman against a staff person in violation of the Fifth Amendment; and (3) failure to provide medical attention to an asthmatic prisoner in federal custody in violation of the Eighth Amendment.

*Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020), *cert. denied*, 210 L. Ed. 2d 832, 141 S. Ct. 2669 (2021), *reh'g denied*, 210 L. Ed. 2d 1000, 141 S. Ct. 2886 (2021) (citations omitted). "Virtually everything else is a 'new context.'" *Id.* at 442. The Supreme Court has "consistently rejected invitations to extend *Bivens*." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 62 (2001).

In support of their claims, IFONE argues that their claims do not present a new *Bivens* context because the Supreme Court recognized a Fifth Amendment claim in *Davis v. Passman*. ECF No. 101 at 11-14. This argument misses the mark.

It is not sufficient that a *Bivens* context has been recognized involving a claim asserting a violation of the same amendment alleged to have been violated here. *Canada v. United States*, 950 F.3d 299, 307 (5th Cir. 2020) (finding that plaintiff's claim for Fifth Amendment Due Process violations presented a new context). In fact, "it is not even enough if 'a plaintiff asserts a violation of the same clause of the same amendment in the same way.'" *Oliva*, 973 F.3d at 442 (quoting *Cantú*, 933 F.3d at 422.). The inquiry for the Court is instead whether "this 'case is different in a meaningful way from previous *Bivens* cases decided by the Supreme Court.'" *Id*. (quoting *Ziglar v. Abbasi*, 198 L. Ed. 2d 290, 137 S. Ct. 1843, 1859 (2017)).

Plaintiffs' assertion that the instant case does not differ meaningfully from *Davis v. Passman* is untenable. That case involved a gender discrimination claim in the context of an employment dispute. *Davis*, 442 U.S. at 231, 248–49. In contrast, IFONE's claims involve allegations that the "Government has infringed on IFONE's property interest in its subcontracts with mission-essential Government contractors and individual contracts for services with servicemembers." ECF No. 43 at 27. The only similarity between the two cases is the alleged violation of the same constitutional amendment. That is not sufficient. Accordingly, IFONE's claims present a new *Bivens* context.

### 2. *Special factors counsel against creating a new Bivens context.*

In assessing whether to create a new *Bivens* context, "separation-of-powers

principles are or should be central to the analysis." *Hernandez v. Mesa*, 885 F.3d 811, 818 (5th Cir. 2018), *aff'd*, 206 L. Ed. 2d 29, 140 S. Ct. 735 (2020) (quoting *Ziglar*, 137 S. Ct. at 1857). A special factor is a sound reason to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong. *Canada*, 950 F.3d at 309. "If any special factors do exist, then *courts must refrain* from creating an implied cause of action in that case." *Id*. (emphasis in original) (quotations marks and citations omitted). The Individual Defendants identify three special factors that they contend counsel against creating a new *Bivens* context: (1) congressional silence; (2) an alternative remedy exists; and (3) intrusion on executive and congressional authority to carry out military affairs. ECF No. 89 at 19-23.

Congressional silence is a special factor giving courts "'reason to pause' before extending *Bivens*." *Byrd v. Lamb*, 990 F.3d 879, 882 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 2850 (2022), *reh'g denied*, No. 21-184, 2022 WL 3580312 (U.S. Aug. 22, 2022) (quoting *Hernandez*, 140 S. Ct. at 743.). Plaintiffs' case relates to government contracting, an area that is subject to a "constellation of statutes and regulations." *Liff v. Office of Inspector Gen. for U.S. Dep't of Labor*, 881 F.3d 912, 920 (D.C. Cir. 2018). Despite the heavy congressional activity in this area, Congress has never authorized suits for damages against individual government officials for actions relating to government contracts. This is indicative of a congressional intent

to not make one available. *Abbasi*,137 S. Ct. at 1862 (describing how Congress's inaction in area commanding "Congressional interest" was "telling").

In response, IFONE asserts that silence of Congress is not dispositive." ECF No. 101 at 15 (citing *Davis*, 442 U.S. at 247). Although congressional silence is not *always* dispositive, the Fifth Circuit has found that congressional silence alone is a special factor that gives "'reason to pause' before extending *Bivens*." *Byrd*, 990 F.3d 882 (quoting *Hernandez*, 140 S. Ct. at 743.). In *Byrd*, the Fifth Circuit found that congressional silence was a special factor and declined to extend *Bivens* on that basis.

A second special factor giving reason to pause before extending Bivens is that the Tucker Act provides IFONE an alternative remedy. IFONE appears to argue that the Tucker Act does not provide an alternative remedy for their due process claims.[26] ECF No. 101 at 16-17 ("Moreover, even if the Court were to find that there is alternative redress for Plaintiffs' Takings claim, which it should not, there is no alternative redress for Plaintiffs' Due Process claims, nor has any been alleged by Defendants."). IFONE does not identify what remedy it seeks for its due process claims that would be unavailable at the Court of Federal Claims.[27] Regardless, the

---

[26] IFONE also reiterates arguments that their claims do not present a new *Bivens* context and that their claims are not contractual but constitutional. ECF No. 101 at 16. Neither of these contentions are relevant to whether an alternative remedy exists.

[27] Assuming IFONE is referring to equitable relief, that argument falls short. As the Court already explained, it cannot grant IFONE the injunctive or declaratory relief it seeks. *See supra* III.B.

"Supreme Court has been clear that the alternative relief necessary to limit *Bivens* need not provide the exact same kind of relief *Bivens* would" provide. *Oliva*, 973 F.3d at 444 (citing *Minneci v. Pollard*, 565 U.S. 118, 129 (2012) ("State-law [tort] remedies and a potential *Bivens* remedy need not be perfectly congruent.")). That an alternative remedy exists is another special factor counseling against extending *Bivens*.

A final special factor the Individual Defendants raise is that extending *Bivens* in this case would intrude on executive and congressional authority to carry out military affairs. ECF No. 89 at 23. In response, IFONE argues that the instant case is distinguishable from those where courts have found a new *Bivens* context would intrude on executive and congressional authority to carry out military affairs because Plaintiffs are not members of the military and, therefore, their claims are not incident to service. ECF No. 107 at 17-18 (citing *United States v. Stanley*, 483 U.S. 669, 683-84 (1987)).

Although *Stanley*'s holding was limited, it broadly recognized that "congressionally uninvited intrusion into military affairs by the judiciary is inappropriate." 483 U.S. 683. Moreover, "judicial abstention from sanctioning a *Bivens* claim in the military context is, at its essence, a function of the separation of powers under the Constitution which 'delegates authority over military affairs to

---

Therefore, IFONE's only available remedy is money damages in the Court of Federal Claims.

Congress and to the President as Commander in Chief.'" *Cioca v. Rumsfeld*, 720 F.3d 505, 509 (4th Cir. 2013) (quoting *Lebron*, 670 F.3d at 547). Indeed, numerous courts have declined to extend *Bivens* when civilians have brought suits in the military context. *See Vance v. Rumsfeld*, 701 F.3d 193, 198-99 (7th Cir. 2012) (declining to extend *Bivens* to private contractors' claims); *Doe v. Rumsfeld*, 683 F.3d 390, 394 (D.C. Cir. 2012) (same); *Lebron v. Rumsfeld*, 670 F.3d 540 (4th Cir. 2012) (declining to extend *Bivens* to detained civilians' claims).

Therefore, special factors counsel against extending *Bivens* to IFONE's claims, and this Court declines to extend *Bivens*.

## IV.   CONCLUSION

The Court **GRANTS** the Agency Defendants' motion to dismiss. ECF No. 70. The Court **ORDERS** that the USA is substituted for the Individual Defendants and that the Individual Defendants' motion to dismiss is **GRANTED**. ECF No. 89. This case is **DISMISSED WITH PREJUDICE**.

Signed on November 1, 2022, at Houston, Texas.

**Dena Hanovice Palermo**
**United States Magistrate Judge**